T.C. Memo. 2013-76

UNITED STATES TAX COURT

WILLIAM R. DODDS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23609-11.                    Filed March 13, 2013.

<u>Thomas Joe Doyle</u> and <u>Randi J. Winter</u>, for petitioner.

<u>Blaine Charles Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined the following deficiencies and

penalties with respect to petitioner's Federal income tax for tax years 2007 and

2008:

| [*2] Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|---------------------|
| 2007 | $39,685 | $7,937 |
| 2008 | 47,757 | 9,551 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

The issues for consideration are (1) whether petitioner engaged in a horse breeding activity with the objective of making a profit within the meaning of section 183 and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner lived in Minnesota when he filed the petition.

Petitioner's Accounting Practice

Petitioner is an accountant with a master's degree in business taxation from the University of Minnesota. Petitioner received his undergraduate degree from St. Cloud State University. From 1983 to January 2012 petitioner ran a successful

**[*3]** accounting firm that he wholly owned. Petitioner typically spent 70 to 80 hours a week at his accounting firm during tax season but no more than 20 hours a week the rest of the year. In tax years 2007 and 2008 petitioner earned over $240,000 and over $280,000, respectively, from his work as an accountant.

Petitioner's Horse Breeding Activity

In 1995 petitioner decided to breed Morgan horses, purchasing two American Morgan broodmares and one stallion. The leap from accountant to horse breeder was not too great for petitioner; he grew up on a dairy farm and was generally familiar with the care and maintenance of large animals, including cattle, swine, sheep, and horses.

Petitioner wanted to breed Morgan horses because he liked their poise, grace, and elegance. He describes them as spirited, bright-eyed, up-headed, and easy. Petitioner was also attracted by the history of the Morgan horse; in particular, he enjoyed the fact that Morgan horses played a role in the Civil War. Petitioner bred his horses under the name Aerie Meadow Morgans. Petitioner continued to maintain his accounting practice after he started breeding horses.

Before petitioner started his horse breeding activity, he moved to a property with 18 acres of land. When petitioner purchased the land, it had a house with a garage and a detached gazebo. To accommodate the horses on his property

[*4] petitioner built several large structures, such as barns and lean-tos, and fenced off approximately six acres for horse pastures.

Petitioner managed the horse breeding activity himself. He worked over 1,500 hours per year mucking stalls, feeding and grooming the horses, maintaining the property and grounds, administering medicine, arranging artificial inseminations, delivering foals, and making all breeding decisions. His son, daughter, and close friend assisted occasionally with feeding, watering, and bedding the horses. Petitioner sometimes gave his children and the close friend monetary gifts for their assistance. Petitioner did not ride recreationally, and he did not allow others to ride his horses recreationally. His horses were ridden only by experienced trainers for training and show purposes.

Petitioner became a member of the American Morgan Association and the North Central Morgan Association in 2000 and a member of the United States Equestrian Federation in 2004. He also participated in horse shows. In both tax year 2007 and 2008 petitioner participated in a local show, a regional show, and a national show.

In 2006 petitioner obtained a patent for a new style of horse feeder. Petitioner designed the feeder to reduce feed waste and the risk of injury to horses. He contracted with a marketing company for the marketing and sale of his feeder.

**[\*5]**   Petitioner advertised his horses on the Aeire Meadow Morgans Web site.  He also advertised his horses in two national magazines and in local magazines for Minnesota and surrounding States.  Petitioner had a business card for his breeding activity which he distributed to potential buyers at horse shows and other venues.

Petitioner never had a written business plan.  At first he attempted to breed grade horses, i.e., horses that are a quality below show horses.  Petitioner wanted to sell the grade horses locally when they were weanlings so that he could avoid the cost of raising the foals.  He also wanted to avoid the high stud fees.  Petitioner's plan was unsuccessful.  In 2000 he sought advice from Charles and Cordia Pearson, Morgan breeders, who convinced petitioner to geld his stallion and use their stallion instead.  Petitioner used their stallion until 2004.

In 2004 petitioner decided to try to produce world-caliber foals.  He stopped using the Pearsons' stallion and began using all national or world champion stallions or grand national stallions.  Petitioner began seeking advice from horsetrainer Eileen O'Bradovich, who had started to train petitioner's horses, as well as from professional horseman Jordy Johns and from a friend who grew up raising Arabian horses.  Ms. O'Bradovich helped petitioner pick out the right stallions to breed to his mares.  Her business, however, focused on training rather than breeding, and Ms. O'Bradovich had never trained Morgan horses before.

**[*6]**  Petitioner also researched the Morgan horse bloodlines.  He studied a set of cards he purchased from the American Morgan Horse Association.  The cards detailed the old Morgan bloodlines and showed which horses were winning horses and "golden cross", i.e., world-champion, Morgan stallions.  Petitioner used these cards to determine which stallions he should use so that he could produce a world caliber horse.

Petitioner did not maintain a separate bank account for his breeding activity.  Although petitioner used QuickBooks for his financial records, which allowed him to separate his personal finances from his breeding activity, he commingled his personal and horse breeding funds.  Petitioner never made financial projections for his breeding activity, nor did he maintain a budget for his breeding activity.  Petitioner was able to generate profit and loss statements from QuickBooks.

Petitioner retained receipts relating to all expenses incurred in connection with the horse breeding activity for the years at issue.  He also insured the buildings he used in the horse breeding activity and a number of his horses.  Petitioner depreciated assets associated with his breeding activity.

Petitioner failed to make his horse breeding activity profitable.  In tax year 2007 petitioner sold two horses.  On his Schedule F, Profit or Loss From Farming, for that year he reported $7,042 of gross income and $129,848 of expenses.  In tax

[*7] year 2008 petitioner sold four horses. On his Schedule F for tax year 2008 petitioner reported $11,018 of gross income and $155,676 of expenses. Petitioner reported the following gross income, expenses, and net losses on his Schedules F for tax years 1995 through 2011:

| [*8] Year | Gross income | Expenses | Net loss |
|---|---|---|---|
| 1995 | n/a | (¹) | ($13,550) |
| 1996 | n/a | --- | (13,639) |
| 1997 | n/a | --- | (11,751) |
| 1998 | n/a | --- | (41,152) |
| 1999 | n/a | --- | (61,916) |
| 2000 | n/a | --- | (56,617) |
| 2001 | n/a | --- | (40,264) |
| 2002 | -0- | --- | (50,356) |
| 2003 | $3,500 | --- | (78,951) |
| 2004 | 13,359 | --- | (128,767) |
| 2005 | 5,722 | --- | (125,317) |
| 2006 | 7,500 | $125,518 | (118,018) |
| 2007 | 7,042 | 129,848 | (122,806) |
| 2008 | 11,018 | 155,676 | (144,658) |
| 2009 | 3,161 | 170,584 | (167,423) |
| 2010 | 14,545 | 150,990 | (136,445) |
| 2011 | 7,210 | 185,065 | (177,855) |

[1]The parties did not provide any information regarding the expenses petitioner reported for tax years 1995 through 2005.

In total petitioner accumulated a net loss of $1,448,885 from his horse breeding activity during those tax years.

**[\*9]**   Petitioner timely filed his Forms 1040, U.S. Individual Income Tax Return, for tax years 2007 and 2008.  On each tax return petitioner reported his occupation as "accountant".  On July 15, 2011, respondent sent petitioner a notice of deficiency regarding tax years 2007 and 2008.  Respondent disallowed petitioner's Schedule F sales and expenses for both years because petitioner did not show that he operated the activity for the good faith purpose of making a profit.  Respondent also determined accuracy-related penalties under section 6662(a) for both tax years.  In response petitioner filed a petition with the Court.  Petitioner contends that he engaged in his horse breeding activity to make a profit during the years at issue and that he is not liable for the accuracy-related penalties.

## OPINION

### Horse Breeding Activity

Respondent determined that petitioner's horse breeding activity was not an activity engaged in for profit within the meaning of section 183 and disallowed loss deductions he claimed on his Schedules F for the years at issue. Petitioner claims that he engaged in the horse activity with an intent to realize a profit.  A taxpayer may not fully deduct expenses regarding an activity under section 162 or 212 if the activity is not engaged in for profit.  Sec. 183(a), (c); see also Keanini v. Commissioner, 94 T.C. 41, 45 (1990).  Under section 183(a), if an activity is not

**[\*10]** engaged in for profit, no deduction attributable to that activity is allowed except to the extent provided by section 183(b). In relevant part, section 183(b) allows deductions that would have been allowable had the activity been engaged in for profit but only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." For expenses to be fully deductible under section 162 or 212, taxpayers must show that they engaged in the activity with the primary objective of making a profit. See Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995), aff'g per curiam T.C. Memo. 1993-634; see also Foster v. Commissioner, T.C. Memo. 2012-207.

Under section 183(d), an activity that consists in major part of the breeding, training, showing, or racing of horses is presumed to be engaged in for profit if the activity produces gross income in excess of the deductions for any two of seven consecutive years, unless the Commissioner establishes to the contrary. See also Wadlow v. Commissioner, 112 T.C. 247, 250 (1999). Petitioner's horse breeding

[*11] activity failed to produce income in excess of its deductions at any time during its operation. Accordingly, the presumption does not apply in this case.

The expectation of a profit need not be reasonable, but the taxpayer must conduct the activity with the actual and honest objective of making a profit. Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309. We give greater weight to objective facts than to the taxpayer's statement of intent. Sec. 1.183-2(a), Income Tax Regs.; see also Keating v. Commissioner, 544 F.3d at 904. Evidence from years after the years in issue is relevant to the extent it creates inferences regarding the taxpayer's requisite profit objective in earlier years. E.g., Foster v. Commissioner, T.C. Memo. 2012-207; Bronson v. Commissioner, T.C. Memo. 2012-17.

Generally, a taxpayer bears the burden of proving that the requisite profit objective exists. Westbrook v. Commissioner, 68 F.3d at 876; see also Rule 142(a); Foster v. Commissioner, T.C. Memo. 2012-207. In order to shift the burden, the taxpayer, among other things, must introduce credible evidence with respect to that issue. Sec. 7491(a)(1); see also Higbee v. Commissioner, 116 T.C. 438, 441 (2001). Credible evidence is evidence the court would find sufficient upon which to base a decision on the issue in favor of the taxpayer if no contrary evidence were submitted. Rendall v. Commissioner, T.C. Memo. 2006-174, aff'd,

**[\*12]** 535 F.3d 1221 (10th Cir. 2008); see Higbee v. Commissioner, 116 T.C. at 442-443. As discussed below, petitioner failed to provide evidence for many of the issues. If we were to consider solely the evidence petitioner presented, we would find that petitioner did not engage in the horse breeding activity for profit as a matter of fact. Therefore, petitioner failed to provide credible evidence within the meaning of section 7491(a)(1), and the burden of proof remains with petitioner.

Section 1.183-2(b), Income Tax Regs., provides a nonexhaustive list of the following nine factors used to determine whether an activity is engaged in for profit: (1) whether the taxpayer carries on the activity in a businesslike manner; (2) the expertise of the taxpayer and his or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) whether the taxpayer expects that the assets used in the activity might appreciate in value; (5) whether the taxpayer has had success carrying on other similar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the taxpayer's financial status; and (9) elements of personal pleasure or recreation. All facts and circumstances are to be taken into account, and no single factor is determinative. Sec. 1.183-2(b), Income Tax Regs.; see also Keating v. Commissioner, 544 F.3d at 904.

[*13] 1.     Manner in Which Petitioner Carried On the Activity

The fact that the taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit motive. Sec. 1.183-2(b)(1), Income Tax Regs.  Characteristics of a businesslike operation include the preparation of a business plan and, in the case of horse breeding and sales, a consistent and concentrated advertising program.  Bronson v. Commissioner, T.C. Memo. 2012-17 (citing Golanty v. Commissioner, 72 T.C. 411, 431 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981), Keating v. Commissioner, T.C. Memo. 2007-309, and Dodge v. Commissioner, T.C. Memo. 1998-89, aff'd without published opinion,188 F.3d 507 (6th Cir. 1999)).  The regulations further provide that a profit motive is indicated when a taxpayer changes operating methods or adopts new techniques with an intent to improve profitability. Sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner advertised his horses on the Aeire Meadow Morgans Web site, in national and local magazines, and with his business cards at horse shows and other venues.  In those cases where we have found that an animal breeder operated in a businesslike manner, generally the breeder not only participated in shows but engaged in other forms of substantial advertising.  See, e.g., Engdahl v. Commissioner, 72 T.C. 659, 667 (1979); Keating v. Commissioner, T.C. Memo.

[*14] 2007-309. The taxpayer's advertising efforts, however, may not be insubstantial compared to the cost of the activity. See Bronson v. Commissioner, T.C. Memo. 2012-17. Because petitioner failed to provide any evidence regarding the cost of his advertising efforts, we are unable to determine that his advertising efforts were substantial compared to the cost of his horse breeding activity.

Petitioner failed to provide a business plan that included more than just generalized goals. See Foster v. Commissioner, T.C. Memo. 2012-207. Petitioner testified: "My initial plan wasn't written, but my plan was to breed grade horses". When he abandoned that plan, petitioner testified that he was aiming to breed world caliber foals that could become successful show horses. Petitioner's plan is inadequate for us to conclude that he had an established business plan. See Keating v. Commissioner, T.C. Memo. 2007-309 (finding that the taxpayer's plan "to raise good quality horses, well-trained horses, horses that will give * * * [the taxpayer] a good reputation, horses that will do well in the market" was inadequate for us to conclude that the taxpayer had an established business plan).

Petitioner likewise failed to maintain a budget or to make any financial projections, economic forecast, or other analyses demonstrating financial management or planning. See Keating v. Commissioner, 544 F.3d at 904; Foster v. Commissioner, T.C. Memo. 2012-207. Petitioner used profit and loss

[*15] statements prepared with QuickBooks, but there is scant evidence that petitioner used them for the important purposes of cutting expenses, increasing profits, and evaluating the overall performance of the operation. See Golanty v. Commissioner, 72 T.C. at 430; Foster v. Commissioner, T.C. Memo. 2012-207.

Petitioner retained all receipts and insured his buildings and some of the horses. Petitioner, however, commingled the financial affairs of his horse breeding activity with his personal finances. Although QuickBooks allowed petitioner to separate his personal finances from his breeding activity, he paid all the expenses of the horse activity from his personal account. This commingling of personal and activity funds is not indicative of businesslike practices. See Montagne v. Commissioner, T.C. Memo. 2004-252, aff'd, 166 Fed. Appx. 265 (8th Cir. 2006).

Perhaps the most important indication of whether an activity is being performed in a businesslike manner is whether the taxpayer implements methods for controlling losses, including efforts to reduce expenses and generate income. See Foster v. Commissioner, T.C. Memo. 2012-207; Dodge v. Commissioner, T.C. Memo. 1998-89. Petitioner provided no evidence showing that he tried to reduce his expenses, abandoned specific activities that had proven unprofitable, or implemented any cost-cutting measures. Rather, petitioner maintained a steady

**[\*16]** pace of losses which skyrocketed to six figures in 2004, and petitioner continued to hemorrhage money from 2004 to 2011, including the years at issue.

Petitioner's failure to produce any significant income was a key factor in his failure to earn a profit. See Foster v. Commissioner, T.C. Memo. 2012-207; Dodge v. Commissioner, T.C. Memo. 1998-89. Petitioner contends that he made changes in his operations over the years in an effort to increase his income. Those changes involved switching from the Pearsons' stallion in 2000 and then switching to national, world champion, or grand national stallions in 2004. Petitioner did not produce any evidence demonstrating that he made a careful and thorough investigation of the potential profitability of these changes before making them. See Foster v. Commissioner, T.C. Memo. 2012-207 (citing Taube v. Commissioner, 88 T.C. 464, 481 (1987)).

On balance, we are not persuaded that petitioner carried on his horse activity in a businesslike manner. This factor weighs against a profit objective.

2.      Expertise of Petitioner and His Advisors

The taxpayer's expertise, research, and extensive study of an activity, as well as his or her consultation with experts, may be indicative of a profit motive. See sec. 1.183- 2(b)(2), Income Tax Regs. As a successful accountant, petitioner did not need to seek further business and tax advice when he started his breeding

**[\*17]** activity.  Petitioner had knowledge about raising horses and other large farm animals from growing up on a farm, but his knowledge was not extensive; there is no indication that he garnered any horse breeding experience at that time.  During the course of his horse breeding activity, petitioner consulted with persons who were knowledgeable about horse breeding, including professional breeders, a professional trainer, and a professional horseman, and petitioner followed the advice they gave him.  See id.; see also Foster v. Commissioner, T.C. Memo. 2012-207.  Petitioner spent time studying the Morgan bloodlines, but the record does not indicate that petitioner spent an extensive amount of time studying the bloodlines.  Petitioner, however, hired a trainer who lacked experience with Morgan horses.  On balance, this factor weighs slightly in favor of a profit objective.

### 3.    Time and Effort Petitioner Expended in Carrying On the Activity

The taxpayer's devotion of much of his or her personal time and effort to carrying on an activity may indicate a profit motive, particularly if the activity does not involve substantial personal or recreational aspects.  Sec. 1.183-2(b)(3), Income Tax Regs.  Although petitioner  continued to maintain his accounting practice, he spent over 1,500 hours each year working on his horse breeding activity, often performing hard manual and menial tasks such as feeding and

[*18] walking the horses and mucking stalls.  See Foster v. Commissioner, T.C. Memo. 2012-207 (the taxpayers demonstrated the requisite profit objective when they spent 20 hours a week doing hard manual and menial tasks in their horse activity).  This factor weighs in favor of a profit objective.

    4.      Expectation That the Horses May Appreciate in Value

An expectation that assets used in the activity will appreciate in value may indicate a profit motive even if the taxpayer derives no profit from current operations.  Sec. 1.183-2(b)(4), Income Tax Regs.  Petitioner credibly testified that he expected his horses would appreciate because of his successful breeding program and that he believed he could eventually produce a "golden cross" Morgan horse capable of garnering stud fees exceeding $10,000 and a sale price exceeding $100,000.  Petitioner also provided some evidence that his 18-acre property increased in value over time, from an estimated $207,000 in 2002 to an estimated $361,900 in 2009.

A profit objective, however, may be inferred from such expected appreciation of the activity's assets only where the appreciation exceeds operating expenses and would be sufficient to recoup the accumulated losses of prior years.  Foster v. Commissioner, T.C. Memo. 2012-207; see Golanty v. Commissioner, 72 T.C. at 427-428.  The appreciation of petitioner's horse breeding assets does not

[*19] begin to approach the amount of losses petitioner has reported since the beginning of his horse activity. Petitioner also failed to provide any evidence linking his 18-acre property's increase in value to his horse breeding activity. Without more information, we cannot conclude that the property increased in value because of petitioner's horse breeding activity. On balance, this factor is neutral.

5.    Petitioner's Success in Similar Activities

Section 1.183-2(b)(5), Income Tax Regs., provides, in pertinent part: "The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit". Although petitioner successfully ran his accounting practice, his work as an accountant is not sufficiently similar to operating a horse breeding activity to indicate that he could do so successfully. See Berry v. Commissioner, T.C. Memo. 2000-109. This factor weighs against a profit objective.

6.    Petitioner's History of Income or Losses

A history of continued losses with respect to an activity may indicate a lack of a profit motive. See sec. 1.183-2(b)(6), Income Tax Regs. While a series of losses during the initial or startup stage of an activity may not necessarily indicate

**[\*20]** a lack of a profit motive, a record of large losses over many years is persuasive evidence that the taxpayer did not have such a motive. Golanty v. Commissioner, 72 T.C. at 426; Foster v. Commissioner, T.C. Memo. 2012-207.

An activity's cumulative losses should not be of such a magnitude that an overall profit on the entire operation, including recoupment of past losses, could not possibly be achieved. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967); Foster v. Commissioner, T.C. Memo. 2012-207. If losses are sustained because of unforeseen or fortuitous circumstances beyond the control of the taxpayer, such losses would not be an indication of the lack of a profit motive. See sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner realized no profits whatsoever in 17 years of engaging in his horse breeding activity. He contends that his losses are not an indication that he lacked a profit objective because the losses were caused by factors beyond his control. Petitioner cites unexpected deaths, miscarriages, stillborn foals, and the negative effect of the recession on horse sales. We acknowledge that horse breeding is a speculative activity, but these events hardly account for an unbroken string of 17 years of losses. Furthermore, petitioner did not show that his horse breeding activity would have been profitable if events beyond his control had not

[*21] occurred.  See Burger v. Commissioner, 809 F.2d 355, 360 n.8 (7th Cir. 1987), aff'g T.C. Memo. 1985-523; Foster v. Commissioner, T.C. Memo. 2012-207.

Petitioner also contends that because he switched from trying to breed grade horses to world caliber horses in 2004, his horse breeding activity was in its initial or startup stage in tax years 2007 and 2008.  Petitioner, however, continuously maintained a horse breeding activity from 1995 through 2011 with the same knowledge, equipment, and space.  The only change petitioner made was from trying to produce one caliber of horse to trying to produce another caliber of horse.  We are unconvinced by this argument, and we decline to "reset the clock" in 2004 simply because petitioner altered the goal of his horse breeding activity.

Petitioner further contends that he could potentially earn a substantial profit with one outstanding horse.  The possibility of a speculative profit in a taxpayer's horse activity, however, is insufficient to outweigh the absence of profits for a sustained period of years.  See Foster v.  Commissioner, T.C. Memo. 2012-207; see also Chandler v. Commissioner, T.C. Memo. 2010-92, aff'd, 481 Fed. Appx. 400 (9th Cir. 2012); McKeever v. Commissioner, T.C. Memo. 2000-288.  This factor weighs heavily against a profit objective.

**[*22]** 7.    Amount of Petitioner's Occasional Profits

The amount of profits in relation to the amount of losses incurred may provide useful criteria in determining the taxpayer's intent.  Sec. 1.183-2(b)(7), Income Tax Regs.  Petitioner never earned a profit from his horse breeding activity.  This factor weighs against a profit objective.

8.    Petitioner's Financial Status

Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit.   Sec. 1.183-2(b)(8), Income Tax Regs.  A taxpayer with substantial income unrelated to the activity can more readily afford a hobby.  Foster v. Commissioner, T.C. Memo. 2012-207.  This is particularly true if the losses from the activity might generate substantial tax benefits.  Golanty v. Commissioner, 72 T.C. at 429; Foster v. Commissioner, T.C. Memo. 2012-207.  Petitioner's substantial income from his accounting firm allowed him to continue his horse breeding activity despite 17 years of substantial losses.  See Foster v. Commissioner, T.C. Memo. 2012-207.  Petitioner's horse breeding activity also generated generous tax savings in the form of net losses that offset petitioner's substantial accounting income.  This factor weighs against a profit objective.

**[\*23]** 9.      Elements of Personal Pleasure or Recreation

The presence of personal motives and recreational elements in carrying on an activity may indicate that the activity is not engaged in for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.  Petitioner argues that neither he nor his family members rode his horses and that his horse breeding activity required him to engage in hard manual labor.  We question, however, whether he would have continued his money-losing horse breeding activity for 17 years unless he received some satisfaction from the work.  See Foster v. Commissioner, T.C. Memo. 2012-207 (the taxpayers' horse activity involved hard work, but the taxpayers would not have continued the losing horse activity for many years had they not received satisfaction from the work).  It is more likely that such satisfaction, rather than a profit objective, accounts for petitioner's persistence.  On balance, this factor is neutral.

Conclusion

After weighing all the facts and circumstances in the light of the relevant factors, we conclude that petitioner did not engage in his horse breeding activity for the years at issue with the requisite profit objective.  Petitioner's many years of losses without a meaningful plan for recouping them are most persuasive.  See id.

[*24] Accordingly, we sustain respondent's determination regarding petitioner's horse breeding activity.

Accuracy-Related Penalties Under Section 6662(a)

Respondent determined that petitioner is liable for accuracy-related penalties pursuant to section 6662(a) for tax years 2007 and 2008. Section 6662(a) adds to a tax 20% of any underpayment attributable to, among other things, (1) negligence or disregard of rules or regulations within the meaning of section 6662(b)(1); or (2) any substantial understatement of income tax within the meaning of section 6662(b)(2). A substantial understatement of income tax is defined as an understatement that exceeds the greater of $5,000 or 10% of the income tax required to be shown on the return for the taxable year. Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production with respect to this penalty. Sec. 7491(c). This burden is satisfied if the Commissioner comes forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. at 446. Respondent determined that petitioner should have reported $58,092 on his 2007 Federal income tax return and $70,846 on his 2008 Federal income tax return. Respondent also determined that petitioner understated his income tax by $39,685 for tax year

[*25] 2007 and by $47,757 for tax year 2008, which are both greater than $5,000 and greater than 10% of the income tax required to be shown on the returns for the taxable years. Thus, respondent has carried his burden to show that petitioner substantially understated his income tax for tax years 2007 and 2008.

If a taxpayer had reasonable cause for and acted in good faith regarding part of the underpayment, no penalty is imposed on that part. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. An important factor for demonstrating reasonable cause and good faith is the extent of the taxpayer's effort to determine the proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner, a successful accountant, did not provide any evidence regarding what, if any, effort he made to determine his proper tax liability at the time of filing his 2007 or 2008 tax return. Each year petitioner sustained significant losses from his horse breeding activity, and any gross income he received from that activity was substantially lower than his losses. Yet, he did not seek advice about whether to continue to treat his horse activity as engaged in for profit. Petitioner is well educated and familiar with Federal income tax laws and regulations. His experience, knowledge, and education weigh against him. See Brown v. Commissioner, T.C. Memo. 2011-83, aff'd, 693 F.3d 765 (7th Cir. 2012). Petitioner failed to show that he had reasonable cause for and acted in good faith regarding the underpayment.

**[\*26]** We hold that petitioner is liable for the substantial understatement penalty under section 6662(a) and (b)(2).  We need not address the applicability of the penalty on the grounds of negligence or disregard of rules or regulations within the meaning of section 6662(b)(1) for tax years 2007 and 2008.  See sec. 1.6662-2(c), Income Tax Regs.  Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered for respondent.