T.C. Summary Opinion 2013-35

UNITED STATES TAX COURT

SAL A. WESTRICH, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24926-10S.                    Filed May 7, 2013.

Sal A. Westrich, pro se.

<u>David J. Neuman</u>, for respondent.

SUMMARY OPINION

VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code (Code) in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's Federal income tax for 2007 and 2008 of $14,914 and $9,530, respectively, and accuracy-related penalties under section 6662(a) of $2,983 and $1,906, respectively.  The issues for decision are:  (1) whether petitioner is entitled to deductions arising from his research and writing activity claimed on his Schedules C, Profit or Loss From Business, and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a).

Background

Some of the facts have been deemed stipulated under Rule 91(f) and are so found.  The stipulated facts and the accompanying exhibits are incorporated herein by this reference.  Petitioner resided in New York at the time the petition was filed.

Petitioner was born in France and became a U.S. citizen in 1953.  Since 1959 petitioner has been a professor of modern history at the Pratt Institute in Brooklyn, New York.  In 2000 petitioner began receiving retirement benefits from

---

[1]  Unless otherwise indicated, all section references are to the Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

the Pratt Institute and Social Security benefits. Petitioner was eligible to retire in 2000 but did not; instead he switched to teaching "half time" so could devote more time to his research and writing activity.[2]

The subject matter of petitioner's research and writing activity was "French", and he frequently traveled to France in connection therewith. Petitioner initially focused on writing plays. One of his plays was produced in 2004, and another had a public reading. However, petitioner did not realize any income from these plays or any other plays he wrote. At some point petitioner decided he had been "overly optimistic" regarding the potential success of writing plays and switched to writing historical studies. However, as with the plays, petitioner did not realize any income from the historical studies.[3] Petitioner did not consult with any accounting or financial advisers regarding his research and writing activity.

---

[2] Before 2000 petitioner had some writing experience. In 1972 petitioner published a book titled "The Ormée of Bordeaux: A Revolution During the Fronde." In 1985 he earned approximately $300 from publishing an essay about the Holocaust, sometime in the early 1990s he earned approximately $200 from publishing "The History of Basque Architecture" in Architecture Magazine, and sometime in the late 1990s he earned $1,000 from an essay about Vincent Van Gogh.

[3] In 2010 petitioner received a contract from the History Press to write a book titled "The Wines of New Jersey". Petitioner finished the book around October 2012. Although petitioner is "very optimistic" about the commercial returns, he did not introduce any evidence regarding how much income he expects to earn from the book.

For 2000 through 2008 petitioner attached Schedules C to his Federal income tax returns, which stated his principal business was "research-writer". Petitioner reported losses each year and never reported any business gross receipts or income. All of the losses related to expenses for petitioner's trips to France. Petitioner characterized the expenses as "basically * * * living expenses." The expenses included renting a house in France and hiring a typist, a driver, and someone to clean the house. Petitioner did not maintain any books or records of these expenses.

On his Schedules C for 2007 and 2008 petitioner reported losses of $59,564 and $37,419, respectively.[4] In 2007 petitioner reported wages of $52,707, annuity income of $52,582,[5] and taxable Social Security benefits of $16,162, resulting in total taxable income of $121,451. In 2008 petitioner reported wages of $72,189 and taxable Social Security benefits of $22,296, resulting in total taxable income of $94,485.

---

[4] On his Schedules C for 2005 and 2006 petitioner reported losses of $62,870 and $61,962, respectively. The record does not contain any evidence on the amounts of losses incurred in 2000 through 2004.

[5] From 1997 to 2007 petitioner received a $52,582 annuity payment each year.

Discussion

I. Petitioner's Research and Writing Activity

Respondent argues that petitioner is not entitled to the loss deductions he claimed on his Schedules C for the years at issue because his research and writing activity was not engaged in for profit. Petitioner claims that he engaged in the research and writing activity with an intent to realize profit. A taxpayer may not fully deduct expenses regarding an activity under section 162 or 212 if the activity is not engaged in for profit. Sec. 183(a), (c); see also Keanini v. Commissioner, 94 T.C. 41, 45 (1990). Under section 183(a), if an activity is not engaged in for profit, no deduction attributable to that activity is allowed except to the extent provided by section 183(b). In relevant part, section 183(b) allows deductions that would have been allowable had the activity been engaged in for profit but only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." For expenses to be fully deductible under section 162 or 212, taxpayers must show that they engaged in the activity with the primary objective

of making a profit. See Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995), aff'g per curiam T.C. Memo. 1993-634; see also Foster v. Commissioner, T.C. Memo. 2012-207.

The expectation of profit need not be reasonable, but the taxpayer must conduct the activity with the actual and honest objective of making a profit. Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309. We give greater weight to objective facts than to the taxpayer's statement of intent. Sec. 1.183-2(a), Income Tax Regs.; see also Keating v. Commissioner, 544 F.3d at 904. Evidence from years after the years in issue is relevant to the extent it creates inferences regarding the taxpayer's requisite profit objective in earlier years. E.g., Foster v. Commissioner, T.C. Memo. 2012-207; Bronson v. Commissioner, T.C. Memo. 2012-17.

Generally, a taxpayer bears the burden of proving that the requisite profit objective exists. Westbrook v. Commissioner, 68 F.3d at 876; see also Rule 142(a); Foster v. Commissioner, T.C. Memo. 2012-207. In order to shift the burden, the taxpayer, among other things, must introduce credible evidence with respect to that issue. Sec. 7491(a)(1); see also Higbee v. Commissioner, 116 T.C. 438, 441 (2001). Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in favor of the taxpayer if no contrary

evidence were submitted.  Rendall v. Commissioner, T.C. Memo. 2006-174, aff'd, 535 F.3d 1221 (10th Cir. 2008); see also Higbee v. Commissioner, 116 T.C. at 442-443.  As discussed below, petitioner failed to provide evidence for several of the factors the Court considers in determining whether he had a profit objective.  If we were to consider solely the evidence petitioner presented, we would find as a matter of fact that he did not engage in the research and writing activity for profit.  Therefore, petitioner failed to provide credible evidence within the meaning of section 7491(a)(1), and the burden of proof remains with him.

Section 1.183-2(b), Income Tax Regs., provides a nonexhaustive list of the following nine factors to be considered in determining whether an activity is engaged in for profit:  (1) whether the taxpayer carries on the activity in a businesslike manner; (2) the expertise of the taxpayer and his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) whether the taxpayer expects that the assets used in the activity might appreciate in value; (5) whether the taxpayer has had success carrying on other similar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the taxpayer's financial status; and (9) elements of personal pleasure or recreation.  All facts and circumstances are to be taken into account, and no single factor is

determinative. Sec. 1.183-2(b), Income Tax Regs.; <u>see also</u> <u>Keating v.</u>
<u>Commissioner</u>, 544 F.3d at 904.

A. <u>Manner in Which Petitioner Carried On the Activity</u>

Section 1.183-2(b)(1), Income Tax Regs., provides that carrying on an
activity in a businesslike manner may be indicative of a profit objective. The
regulation further identifies three practices consistent with businesslike
operations: (1) maintaining complete and accurate books and records; (2)
conducting the activity in a manner substantially similar to that of profitable
businesses of the same nature; and (3) changing operational methods and
techniques to improve profitability. <u>See</u> <u>id.</u> The Tax Court has found establishing
a business plan to be a fourth practice evidencing businesslike operations. <u>See</u>
<u>Sanders v. Commissioner</u>, T.C. Memo. 1999-208; <u>see also</u> <u>Dodds v.</u>
<u>Commissioner</u>, T.C. Memo. 2013-76, at *13-*14.

Petitioner did not introduce any evidence of a business plan. He did not
maintain any financial books or ledgers for his research and writing activity.
Furthermore, petitioner commingled the financial affairs of his research and
writing activity with his personal finances. This commingling of personal and
activity funds is not indicative of businesslike practices. <u>See</u> <u>Montagne v.</u>
<u>Commissioner</u>, T.C. Memo. 2004-252, <u>aff'd</u>, 166 Fed. Appx. 265 (8th Cir. 2006).

Perhaps the most important indication of whether an activity is being performed in a businesslike manner is whether the taxpayer implements methods for controlling losses, including efforts to reduce expenses and generate income. See Foster v. Commissioner, T.C. Memo. 2012-207; Dodge v. Commissioner, T.C. Memo. 1998-89, aff'd without published opinion, 188 F.3d 507 (6th Cir. 1999). Petitioner provided no evidence showing that he tried to reduce his expenses or implemented any cost-cutting measures. Rather, petitioner reported losses each year.

Petitioner's failure to produce any income was a key factor in his failure to earn a profit. See Foster v. Commissioner, T.C. Memo. 2012-207; Dodge v. Commissioner, T.C. Memo. 1998-89. Petitioner alleges that he stopped writing plays and started writing historical studies in an attempt to improve profitability. However, petitioner did not produce any evidence demonstrating that he made a careful and thorough investigation of the potential profitability of this change before making it. See Foster v. Commissioner, T.C. Memo. 2012-207 (citing Taube v. Commissioner, 88 T.C. 464, 481 (1987)). This factor weighs against finding petitioner's research and writing activity was engaged in for profit.

B.  Expertise of Petitioner or His Advisers

A taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit intent.  Sec. 1.183-2(b)(2), Income Tax Regs.  Taxpayers should not only familiarize themselves with the undertaking, but should also consult or employ an expert, if needed, for advice on how to make the operation profitable.  Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), aff'g T.C. Memo. 1985-523.  Courts have made clear that the focus is upon expertise and preparation with regard to the economic aspects of the particular business.  Wesinger v. Commissioner, T.C. Memo. 1999-372 (citing Golanty v. Commissioner, 72 T.C. 411, 432 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981)).

When petitioner began his research and writing activity, he had more than 40 years of experience as a history professor.  Thus, we find he had subject matter expertise with respect to his historical studies projects.  Petitioner also had some limited prior experience with publishing his work.  However, petitioner did not establish that this limited experience provided him with any expertise on how to make his research and writing activity a profitable venture.  Moreover, despite incurring significant losses and earning no income, petitioner never solicited the aid of any professional business advisers.  Because petitioner lacked expertise

with respect to the economic aspects of his research and writing activity, this factor weighs against finding petitioner's research and writing activity was engaged in for profit.

### C. Time and Effort Expended

The fact that a taxpayer spends much time and effort in conducting an activity may indicate that he or she has a profit objective, particularly if the activity does not have substantial personal or recreational aspects. Sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner testified that he stopped teaching full time in 2000 so that he could devote time to his research and writing activity, and he asserts on brief that the creative process is "enormously time-consuming". However, petitioner presented no evidence regarding how much time and effort he actually spent on his research and writing activity. This factor weighs against finding petitioner's research and writing activity was engaged in for profit.

### D. Expectation That Assets Used in the Activity May Appreciate in Value

The expectation that assets used in the activity will appreciate in value sufficiently to lead to an overall profit when netted against losses may indicate a profit motive. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner had no assets devoted to the research and writing activity. This factor is neutral.

E.  Success in Similar or Dissimilar Activities

If a taxpayer has previously engaged in similar activities and made them profitable, this success may show that the taxpayer has a profit objective, even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.  Success in unrelated activities may also be indicative of a profit objective in the challenged activity.  See Daugherty v. Commissioner, T.C. Memo. 1983-188 (finding that a taxpayer who started and maintained a profitable screws product company had reason to believe he would be successful in a farming activity).  Conversely, a lack of such experience does not necessarily indicate the activity was not engaged in with the objective of making a profit.  Arwood v. Commissioner, T.C. Memo. 1993-352.

Petitioner has not shown that his prior writing activities were profitable.  Petitioner's publications before 2000 were sporadic and earned only limited income.  Thus, we cannot find, on the basis of petitioner's prior writing experience, that he engaged in the research and writing activity for profit.  However, we reject respondent's argument that because petitioner earned so little income from his prior publications, he knew that his researching and writing activity would not be profitable.  Instead, we find this factor to be neutral.

F.  <u>History of Income or Loss</u>

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit objective.  Sec. 1.183-2(b)(6), Income Tax Regs.; <u>see also</u> <u>Golanty v. Commissioner</u>, 72 T.C. at 426.  A series of losses during the startup phase of an activity does not necessarily indicate the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.  But where losses continue to be sustained beyond the customary startup period, that may be an indication the activity is not engaged in for profit.  <u>Id.</u>

Petitioner incurred losses each year of his research and writing activity, and has never earned any income from it.  Petitioner argues, however, that the activity was still in its startup phase during the years at issue.  While we appreciate that it can take a writer many years to produce a play or a book, petitioner has provided no evidence to support a finding that he was in a startup phase.  Petitioner has offered no evidence regarding what projects he was working on during these alleged startup years; thus, we do not know whether petitioner spent several years writing one work or started and stopped a new project every few months.  Without such information, we cannot conclude that petitioner was in the startup period for eight years.

Moreover, petitioner continued to travel to France and incur substantial losses despite never earning any income. Petitioner's continued spending of tens of thousands of dollars on his research and writing activity despite substantial losses and no income suggests the activity was not carried on for profit. This factor weighs against finding petitioner's research and writing activity was engaged in for profit.

G. Amount of Occasional Profits

The amount of any occasional profits the taxpayer earned from the activity may show that the taxpayer had a profit motive. See sec. 1.183-2(b)(7), Income Tax Regs. An occasional small profit from an activity generating large losses or from an activity in which the taxpayer has made a large investment would not generally be determinative that the activity is engaged in for profit. Id. In addition, "A small chance to make a large profit may indicate that a taxpayer has a profit objective even if he or she has large continuous losses." Lundquist v. Commissioner, T.C. Memo. 1999-83, slip op. at 27 (citing section 1.183-2(b)(7), Income Tax Regs.), aff'd without published opinion, 211 F.3d 600 (11th Cir. 2000).

Between the time he started his research and writing activity in 2000 and the years in issue,[6] petitioner had never earned a profit. Petitioner argues that he is "involved in intellectual and creative work in which the returns are uncertain but the chance of a large return is great". However, petitioner has failed to introduce any evidence regarding what he was writing and how much profit he expected to earn. Without knowing petitioner's profit expectations, it is impossible for the Court to determine whether they were reasonable. While we understand that one successful book could be profitable enough to justify years of losses, petitioner has failed to show it was reasonable for him to believe he was working on a book with enough potential economic success to justify the substantial losses he incurred year after year.

Petitioner argues that his publishing agreement with the History Press establishes that his expectation of profit was reasonable. However, the losses petitioner incurred during the years at issue were not related to "The Wines of New Jersey". Additionally, petitioner did not introduce any evidence regarding the expected income from this book.[7] It is unknown whether the potential profit

---

[6] No evidence was presented that petitioner earned any profit after the years in issue.

[7] The publishing agreement establishes that petitioner is to receive royalties

(continued...)

from this publishing agreement was significant enough to offset all the losses petitioner incurred in his research and writing activity.

This factor weighs against finding petitioner's research and writing activity was engaged in for profit.

H. Financial Status

Substantial income from sources other than the activity in question, particularly if the activity's losses generate substantial tax benefits, may indicate that the activity is not engaged in for profit. See sec. 1.183-2(b)(8), Income Tax Regs. Petitioner received substantial income from sources other than his research and writing activity and derived substantial tax benefits from deducting the losses associated with his research and writing activity. In 2007 petitioner's loss from his research and writing activity offset 49% of his $121,451 taxable income. In 2008 petitioner's loss from his research and writing activity offset 40% of his $94,485 taxable income. This factor weighs against finding petitioner's research and writing activity was engaged in for profit.

---

[7](...continued)
based upon sales of the book, but there is no evidence regarding how many books are expected to be sold and at what price.

I.  Elements of Personal Pleasure or Recreation

Personal motives for carrying on an activity may indicate the activity is not engaged in for profit, especially where there are recreational or personal elements involved.  Sec. 1.183-2(b)(9), Income Tax Regs.  Petitioner did not testify as to the enjoyment he derived, or lack thereof, from his research and writing activity, but it is likely that he derived at least some personal pleasure from it (and the trips to France); otherwise he would not have continued it each year while incurring such significant losses.  See Dodds v. Commissioner, T.C. Memo. 2013-76, at *23 (questioning whether taxpayer would have continued his money-losing horse breeding activity for 17 years if he did not receive some satisfaction from the work).  This factor is neutral.

J.  Conclusion

Considering the factors discussed above, we find that petitioner's research and writing activity was not engaged in for profit, and the related expenses are therefore not deductible under section 162 or 212 for any of the years at issue.  Respondent's determination of deficiencies based on that determination is sustained.

## II.  Accuracy-Related Penalties

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax due to:  (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.  "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code; this includes a failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  "Disregard" means any careless, reckless, or intentional disregard.  Sec. 6662(c).  "Understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate.  Sec. 6662(d)(2)(A).  A "substantial understatement" of income tax is defined as an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A).  The understatement is reduced to the extent that the taxpayer has:  (1) adequately disclosed his or her position and has a reasonable basis for

such position, or (2) has substantial authority for the tax treatment of the item. Sec. 6662(d)(2)(B). The burden of production is on the Commissioner to produce evidence that it is appropriate to impose the relevant penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446.

The understatement of income tax on petitioner's 2007 Federal income tax return is substantial. Furthermore, for both 2007 and 2008, petitioner's records were insufficient to substantiate several of his claimed deductions, and he failed to keep adequate books and records. Accordingly, respondent has met his burden of production. See Smith v. Commissioner, T.C. Memo. 1998-33; sec. 1.6662-3(b)(1), Income Tax Regs.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer shows that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. Petitioner offered no evidence that he acted with reasonable cause and in good faith. Accordingly, we hold that petitioner is liable for a section 6662(a) accuracy-related penalty due to negligence or disregard of rules or regulations.

To reflect the foregoing,

Decision will be entered

for respondent.