IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| REGGIE B. MEDFORD, and SALLY MEDFORD, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 240188R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Written Objection Determination and Notice of Assessment, dated January 8, 2024, for the 2019 tax year. Defendant determined that Plaintiffs' horse boarding activity was not operated with a profit motive. As a result, Defendant counted their gross receipts as ordinary income and denied their Schedule C deductions under Internal Revenue Code (IRC) section 183, commonly referred to as the hobby loss rules. The court disagrees with Defendant's determination and finds that Plaintiffs' activity was operated with a profit motive.

Trial was held on September 12, 2024, in the courtroom of the Oregon Tax Court. Attorney James Oberholtzer appeared on behalf of Plaintiffs. Sally Medford (Sally) and Reggie B. Medford (Reggie) testified on their own behalf. Marla Santino and Jeanne Gettman also testified on behalf of Plaintiffs. Jennifer O'Brien appeared on behalf of Defendant. Plaintiffs' Exhibits 1 to 76 and Defendant's Exhibits A to Z were received into evidence.

I. STATEMENT OF FACTS

In 2013, Plaintiffs purchased a 16-acre property in Woodburn, Oregon, which included a residence, a small barn, and an indoor riding area. Although they did not own horses at the time,

both had equestrian experience in their youth. The property exceeded their original budget and size expectations, prompting them to explore several income-generating agricultural ventures. They considered hazelnut farming and goat breeding but ultimately found these alternatives impractical due to poor soil quality issues and irrigation limitations.

Plaintiffs chose to start a full-service horse boarding business that managed all aspects of horse care. They relied on advice from a friend, Cheryl Ledford, an experienced horse boarder, and also conducted online research. The facility began with a four-stall barn, which they expanded to include 14 new stalls, and an old goat barn which they repurposed, resulting in 23 stalls by 2018, including stalls for their own horses. (Ptfs' Ex 15 to 18, 42 to 55, 59.)

The business launched a website in 2013 to market their services, but they also relied on word-of-mouth to attract clients. (Ptfs' Ex 20.) Plaintiffs entered into boarding contracts and liability waivers (Ptfs' Ex 21, 22), maintained horse rosters and stall assignments (Ptfs' Ex 24), tracked veterinary care, and kept handwritten income and expense ledgers (Ptfs' Ex 25 to 27). They filed Articles of Organization for French Prairie Acres LLC (Ptfs' Ex 34), carried liability insurance (Ptfs' Ex 32, 33), and kept records of labor hours and pay for hired help (Ptfs' Ex 29). A "barn chores checklist" itemized 26 daily tasks (Ptfs' Ex 30, 31).

Plaintiffs reported cumulative business losses from 2013 to 2019 totaling $64,083, with 2014 being the only profitable year. (Def's Ex D at 9.) However, excluding property holding costs, they had a net positive cash flow of $16,868. *Id*. Plaintiffs raised boarding fees by approximately $75 per month over a six-year period. (Def's Ex D at 12.) The operation was largely maintained by Sally working full-time to facilitate the business, with Reggie assisting in facility upgrades and construction on the weekends.

/ / /

Although Plaintiffs lacked a formal written business plan, they modeled aspects of the business after others in the industry and consulted with peers. (Ptfs' Ex 38.) Defendant challenged their business classifications due to discrepancies between their ledgers and bank records, problems with form 1099 filings, lack of adequate fee structure adjustments, and possible misclassification of employees as independent contractors. (Ptfs' Ex 5 at 4.)

Plaintiffs sold the property in 2023 for $1.3 million, generating a gain of $875,000. Improvements made to the property during their operation likely enhanced its marketability for horse-related use. Sally testified that the buyers of the property owned eight horses, suggesting the facility's appeal as an equestrian property may have been responsible for the property appreciation.

Reggie's employment income helped subsidize the operation, although Plaintiffs testified that the horse boarding income was essential to be able to afford the property. Plaintiffs personally owned several horses that were boarded on-site, though expenses for their care were not distinguished from business costs.

## II. ANALYSIS

The issue presented is whether Plaintiffs operated their horse boarding operation with a genuine profit motive under IRC section 183. Oregon tax law follows the federal definition of taxable income, and thus the IRC governs this analysis. *See* ORS 316.022(6); ORS 316.048.[1] As the party seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence. ORS 305.427.

IRC section 162 allows deductions for ordinary and necessary expenses, but IRC section 183(a) limits deductions for activities not engaged in for profit. Treasury Regulations section

---

[1] References to the Oregon Revised Statutes (ORS) are to the 2017 edition.

1.183-2 list nine non-exhaustive factors for evaluating a taxpayer's intent. An activity is "engaged in for profit if the taxpayer's 'predominant, primary or principal objective' in engaging in the activity was to realize an economic profit independent of tax savings." *McMillan v. Comm'r,* 105 T.C.M. (CCH) 1263 (2013), 2013 WL 461640 at *4 (US Tax Ct) (quoting *Wolf v. Comm'r*, 4 F3d 709, 713 (9th Cir. 1993)). The test considers both subjective intent and objective evidence, with greater weight on the latter. *Dodds v. Comm'r*, 105 T.C.M. (CCH) 1472 (2013), 2013 WL 968241 at *4 (US Tax Ct). Objectivity does not mean that the court should "substitute [its] own business judgment for what the [taxpayer] could have done better." *Metz v. Comm'r*, 109 T.C.M. (CCH) 1248 (2015), 2015 WL 1285276 at *10 (US Tax Ct).

Plaintiffs argue that they operated the horse boarding facility as a business with the intent to make a profit. Defendant argues that Plaintiffs' inadequate business records, the absence of a formal business plan, persistent losses, Plaintiffs' personal enjoyment of the activity, and property appreciation unrelated to Plaintiff's business plan show that profit was not Plaintiffs' primary motivation. The court analyzes this case using the nine-factor test found in Treasury Regulation section 1.183-2, with greater weight given to objective facts over subjective intent. The first factor examines the activity using the broadest view.

A.    *The Manner In Which Taxpayers Carry On The Activity*

A businesslike manner of operation supports a profit motive. Treas Reg § 1.183-2(b)(1). Several subfactors may be relevant: (1) whether taxpayer maintained complete and accurate books and records for the activity and used them to periodically analyze profit and expenses; (2) whether taxpayer conducted the activity similar to comparable, profitable activities; (3) whether taxpayer changed operating procedures, adopted new techniques, or abandoned unprofitable methods to improve profitability; and (4) whether taxpayer advertised. *See Feola v Dept. of*

*Rev.*, TC-MD 160081N, 2018 WL 1505636 at \*7-\*11 (Or Tax M Div, Mar 27, 2018).

The court finds that Plaintiffs conducted the activity in a businesslike manner. They kept detailed records, maintained a professional website, used formal boarding contracts, obtained insurance, and undertook capital improvements to expand capacity. Defendant raised valid concerns about financial controls, mistakes, and the absence of a business plan. That said, the law does not require perfection; only that a taxpayer act in a manner consistent with an intent to make a profit. On balance, the operation appeared organized and aligned with commercial standards. This factor favors Plaintiffs. Given this overall business-like operation, the next question is whether Plaintiffs had or sought sufficient expertise to conduct the activity profitably.

B.      *The Expertise Of Taxpayers Or Their Advisors*

"The main inquiry is whether petitioner received advice from the experts as to the accepted principles and economics of profitably running a business and not merely the general advice that a horse enthusiast would seek in training and showing horses as a hobby." *Betts v. Comm'r*, 100 T.C.M. (CCH) 67 (2010), 2010 WL 2990300 at \*8 (US Tax Ct). Consultation with persons who are knowledgeable about horses including professional breeders, trainers, veterinarians, advisors, and others in the industry supports a profit motive. *See Feola*, WL 1505636 at \*11.

Plaintiffs had some prior experience with horses and took steps to educate themselves further. They researched contracts, facility design, and pricing strategies. While limited, their consultation with industry peers and creation of professional documents supported their efforts to run the business profitably. This factor slightly favors Plaintiffs. Building upon their efforts to acquire and apply industry knowledge, the court now examines the time and labor Plaintiffs devoted to the enterprise.

C.      *The Time And Effort Expended By Taxpayers In Carrying On The Activity*

"The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit."  Treas Reg § 1.183–2(b)(3).

Sally's full-time labor, and the couple's investment of personal effort in constructing and managing the facility for over a decade, weighs heavily in their favor.  The extent of their labor signals an intent beyond recreation.  This factor favors Plaintiffs.  The court next considers whether Plaintiffs reasonably anticipated that appreciation of the property would contribute to their overall profit motive.

D.      *The Expectation That Assets Used In The Activity May Appreciate In Value*

Under Treasury Regulation section 1.183-2(b)(4), appreciation in the value of assets may support a profit motive if the activity contributes to the property's value.  That regulation refers to another regulation, 1.183-1, which states in relevant part:

> "Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value.  Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than those directly attributable to the holding of the land such as interest on a mortgage secured by the land, annual property taxes attributable to the land and improvements, and depreciation of improvements to the land)."

Treas Reg § 1.183-1(d).

Defendant's written objection determination found that Plaintiffs had a positive cash flow when considering only operating expenses—that is, when subtracting out expenses related to holding the land.  Thus, Defendant concluded that the holding of the land and Plaintiffs horse

boarding activity were not separate activities.

While the sale of the property produced a significant capital gain, Plaintiffs did not present evidence that appreciation was their goal. Their improvements likely enhanced the value of the property. However, no market data was provided to isolate the appreciation of the business-related improvement from general real estate trends. The court finds this factor neutral. Having considered the possible profit through property appreciation, the court turns to Plaintiffs' history of success, or lack thereof, in other business endeavors.

E.     *The Success Of Taxpayers In Carrying On Other Similar Or Dissimilar Activities*

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable." Treas Reg § 1.183–2(b)(5).

Plaintiffs did not present evidence of their success in any self-employment venture or any profit-oriented activity involving horses. This factor weighs against Plaintiffs. In addition to prior business experience, the court must access the financial results of this activity over time, starting with Plaintiffs' history of income or losses.

F.     *Taxpayers' History Of Income Or Losses With Respect To The Activity*

"A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not being engaged in for profit." Treas Reg § 1.183-2(b)(6).

/ / /

Plaintiffs' operation produced only occasional profits and fell short of generating returns commensurate with their investment. This factor weighs against Plaintiffs. Relating to the history of losses is the issue of whether Plaintiffs ever achieved any meaningful profit from the activity, which is the subject of the next factor.

G.     *The Amount Of Occasional Profits, If Any, Which Are Earned*

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent." Treas Reg § 1.183–2(b)(7).

There were no consistent or significant profits from Plaintiffs' operation. Despite their activities being a long-term arrangement, Plaintiffs' $75 adjustment of their fees was insufficient to generate more than nominal profits. This factor weighs against Plaintiffs. The court next considers whether Plaintiffs' overall financial position undermines or supports a profit motive for this activity.

H.     *Taxpayers' Financial Status*

"The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." Treas Reg § 1.183–2(b)(8).

Reggie's employment income helped sustain the venture, which suggests the absence of financial necessity for profitability. However, Plaintiffs also testified that they relied on the boarding income to be able to afford the property. Additionally, Plaintiffs maintained a positive cash flow and would have produced slight profits if costs of holding the land were excluded.

This factor slightly favors Plaintiffs. Finally, the court evaluates whether Plaintiffs engaged in the activity primarily for personal satisfaction or recreation rather than for profit.

## I. *Any Elements Of Personal Pleasure Or Recreation*

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Treas Reg § 1.183–2(b)(9).

Horse boarding is one of the activities that people often associate as a hobby. Plaintiffs' goal was to live in the country and re-establish horse ownership from their youth. While there is hard work associated with the activity, the motivation for starting the activity appears to have been at least partly personal. Plaintiffs owned several horses, and they did not appear to be part of the income production, yet expenses for their care was not broken out from the total activity expenses. This factor weighs against Plaintiffs. After weighing all nine factors, the court summarizes the overall balance and determines which considerations carry the most weight in this case.

In sum, factors 1, 2, 3, and 8 favor Plaintiffs; factor 4 is neutral; factors 5, 6, 7, and 9 weigh against them. While the factors appear evenly balanced, the court places greater weight on factors 1 and 3. Plaintiffs' businesslike operation and extensive personal commitment to build a business were persuasive toward proving that they intended to operate profitably. While they made mistakes, perfection is not required. Under the preponderance of the evidence standard, the court concludes that Plaintiffs engaged in the horse boarding operation with a profit motive.

/ / /

/ / /

### III. CONCLUSION

After careful consideration, the court finds that Plaintiffs conducted their horse boarding operation with a genuine intent to earn a profit. Accordingly, they are entitled to deduct related business expenses for the 2019 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal for the 2019 tax year is granted.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Magistrate Richard D. Davis and entered on June 20, 2025.*